**CITY OF GARY, A Municipal Corporation and the Gary Common Council Members–Kyle Allen, Mary Brown, Alex A. Cherry, Charles Hughes, Marilyn Krusas, Roy N. Pratt, Jerome Prince, Carolyn D. Rogers and Robert White, in their Official Capacities as Members of the Gary Common Council, Appellants–Defendants.**

v.

**Robert McCRADY, Appellee–Plaintiff.**

No. 45A04–0508–CV–485.

Court of Appeals of Indiana.

July 26, 2006.

Marc C. Laterzo, Gary, IN, Attorney for Appellants.

Clorius L. Lay, Gary, IN, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Defendant–Appellant Gary Common Council appeals the trial court's entry of partial summary judgment in favor of

Plaintiff–Appellee Robert McCrady. We reverse.

McCrady presents two issues, one of which we will address first due to its subject matter. Restated, that issue is:

I. Whether the Council's appeal should be dismissed for its failure to conform its brief to the Indiana Rules of Appellate Procedure.

The Gary Common Council (Council) presents three issues for our review, which we restate as:

II. Whether the trial court erred by denying the Council's motions to strike affidavits submitted by McCrady.

III. Whether the trial court erred by granting partial summary judgment in favor of McCrady.[1]

The second of McCrady's two issues is:

IV. Whether McCrady is entitled to attorney fees.

In August 1997, McCrady was hired by the Gary Common Council (Council) as Legislative Administrator, which position was later designated as Chief of Operations. In January 2000, a newly elected Council took office and advertised that they were seeking applicants for the position of Chief of Operations. McCrady, as well as others, submitted their application and interviewed for the position, but the council was unable to decide on a candidate. The position was advertised again, and McCrady again submitted his application and was granted an interview. In August 2000, the Council held a regular meeting and the issue of filling the position of Chief of Operations was discussed. In the end, a council member made a motion to appoint a candidate other than McCrady to the position of Chief of Operations. The motion passed with five members voting in favor, three voting against, and one abstention. The president of the Council then sent a letter to McCrady informing him of his termination from the position of Chief of Operations. Alleging violations of the Open Door Law, McCrady filed suit against the City of Gary and the Gary Common Council. McCrady filed a motion for partial summary judgment, to which the Council responded with a cross motion, and the trial court granted partial summary judgment in favor of McCrady. This appeal ensued.

■ We first address the issue raised by McCrady concerning the Council's alleged lack of adherence to the Indiana Rules of Appellate Procedure. McCrady asks us to dismiss the Council's appeal, or, in the alternative, to strike from our consideration two sections of the Council's brief. In support of his argument, McCrady cites App. R. 46(A)(8)(a), which provides: "The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22." McCrady claims that two sections of the Council's brief do not comply with App. R. 46(A)(8)(a) because they do not contain citations to authorities and statutes to support the Council's argument.

■ Both sections of the Council's brief to which McCrady refers contain discussion of whether the Council violated the Open Door Law during its meeting in August 2000 and with the President's letter

---

1. The Council also raised the issue of whether McCrady was entitled to claim lost wages pursuant to Ind.Code § 22–2–5–2. However, we need not discuss this issue because the CCS shows that McCrady filed a motion to dismiss this part of his claim, and it was dismissed by the trial court on May 2, 2005.

to McCrady notifying him of his termination. The Council cites a case that states the purpose of the Open Door Law and cites the statutory provision that sets forth the Open Door Law. In addition, the Council includes a citation to the Appendix in its discussion. Both sections contain argument and reasoning in support of the Council's contention that the facts of the present case do not present a violation of the Open Door Law. We will not address arguments that are inappropriate, improperly expressed, or too poorly developed to be understood, *Lasater v. Lasater*, 809 N.E.2d 380, 389 (Ind.Ct.App.2004); however, that is not the situation in the present case. We find no error that would justify a dismissal of this appeal or striking of the relevant portions of the Council's brief.[2]

We turn now to the issues presented on appeal by the Council. First, the Council contends that the trial court erred by denying its motions to strike certain affidavits submitted by McCrady in support of his motion for partial summary judgment.

 The decision to admit or exclude evidence lies within the sound discretion of the trial court. *Strack and Van Til, Inc. v. Carter*, 803 N.E.2d 666, 670 (Ind.Ct.App. 2004). The trial court's determination is afforded great discretion on appeal. *Id.* To that end, we will not reverse the trial court's decision absent a showing of manifest abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Illiana Surgery & Medical Center, LLC. v. STG Funding, Inc.*, 824 N.E.2d 388, 399 (Ind.Ct.App.2005).

 Affidavits in support of or in opposition to a motion for summary judgment are governed by Indiana Trial Rule 56(E), which provides, in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The requirements of T.R. 56(E) are mandatory; hence, a court considering a motion for summary judgment should disregard inadmissible information contained in supporting or opposing affidavits. *Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind.Ct.App. 2005). Further, the party offering the affidavit into evidence bears the burden of establishing its admissibility. *Duncan v. Duncan*, 764 N.E.2d 763, 766 (Ind.Ct.App. 2002), *reh'g denied, trans. denied.*

We begin with the affidavit of Public Access Counselor Anne M. O'Connor. McCrady designated this affidavit as evidence in support of his motion for partial summary judgment, and the Council moved the trial court to strike the affidavit from consideration. The trial court denied the Council's motion.

 Statements made by O'Connor in her affidavit involve the investigation of the alleged violation of the Open Door Law in regard to McCrady's termination. Although it appears from her affidavit that she conducted some amount of investigation, the bulk of her affidavit is based upon the investigation and statements of the Office of Corporation Counsel for the City of Gary and the Law Department for the City of Gary. In addition, she relates information premised by phrases such as, "I agreed with Atty. Clorius L. Lay's [McCrady's counsel] conclusion that the Gary Common Council had violated

---

**2.** For an issue such as this, we believe the better practice to be a motion to strike a party's brief or a portion of the brief, as McCrady's alternate argument suggests, rather than a motion to dismiss the appeal.

Indiana Open Door Law by failing to take action to terminate Mr. McCrady in a public meeting" and "City Attorney Luci Horton of the Law Department for City of Gary informed me they agreed with my findings that the Gary Common Council did not properly terminate Mr. Robert McCrady...." Affidavit of Public Access Counselor Anne M. O'Connor, Appellant's Appendix at 274. Clearly, O'Connor's affidavit was not made upon her personal knowledge of the information she sets forth in the affidavit as required by T.R. 56(E). *See e.g., Duncan,* 764 N.E.2d at 767 (court declined to consider information in affidavit because affidavit referred to affiant's conversations with people who informed her of certain facts and such testimony is inadmissible hearsay as it is based upon out-of-court statements of other individuals and not upon affiant's personal knowledge). Moreover, not only is O'Connor's affidavit not based upon her personal knowledge but also it contains improper conclusions of law and opinions as to the main issue of this case. "Mere assertions in an affidavit of conclusions of law or opinions will not suffice." *Dedelow v. Rudd Equipment Corp.,* 469 N.E.2d 1206, 1209 (Ind.Ct.App.1984).

▆▆▆ Further, McCrady claims that although O'Connor's affidavit contains information that is not based on her personal knowledge, it should not be struck because the information falls within the hearsay exception outlined in Evid. R. 803(8), which sets forth the "public records and reports" exception to the general prohibition against the admission of hearsay evidence found in Evidence Rule 802. We first note that McCrady did not raise this argument in the trial court. *See* Tr. at 6–15. Generally, a party waives appellate review of an argument if that party did not present that argument before the trial court. *Nance v. Miami Sand & Gravel,*

*LLC,* 825 N.E.2d 826, 834 (Ind.Ct.App. 2005), *trans. denied,* 841 N.E.2d 180. Thus, this argument is waived.

▆▆▆ Waiver notwithstanding, O'Connor's affidavit should have been struck. Evid. R. 803(8) provides, in pertinent part: "Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: ... and (d) factual findings resulting from special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case." The information contained in O'Connor's affidavit was a result of her investigation into the alleged violation of the Open Door Law by the Council when it terminated McCrady. Pursuant to Evid. R. 803(8)(d), these factual findings constitute a public record and report exception to the hearsay rule only when they are offered by an accused in a criminal case. Such is not the case here, and the trial court erred by not striking O'Connor's affidavit.

▆▆▆ The second set of affidavits that the Council desires to have struck is the affidavit and the amended affidavit of McCrady. The Council claims that the trial court should have struck both of McCrady's affidavits because they contain hearsay. Although in its brief the Council claims that the trial court did not rule on its motion to strike McCrady's amended affidavit, a review of the CCS reveals that the court denied the Council's motion to

strike the amended affidavit of McCrady on September 18, 2003.

As we stated previously, the requirements of T.R. 56(E), including the requirement that supporting and opposing affidavits shall be made on personal knowledge, are mandatory. *See Price*, 832 N.E.2d at 1039. McCrady's affidavits are replete with information that is clearly not his personal knowledge. Numerous paragraphs in both affidavits simply quote certain council members as to statements they allegedly made at council meetings. In other paragraphs, information is presented and the deposition of a person other than McCrady is cited as the source of the information. Further, the exhibits attached to McCrady's affidavits provide more of the same information that is provided in the affidavit; that is, the information is not within the personal knowledge of McCrady. Thus, the trial court erred by not striking McCrady's affidavit, amended affidavit, and attached exhibits because the affidavits and exhibits were not based upon personal knowledge and were instead statements of inadmissible hearsay information.

McCrady attempts to argue that his affidavits can withstand a hearsay argument based upon the hearsay exceptions provided in Evid. Rules 803(1) and 803(5). However, this argument is waived because he did not raise it in the trial court. *See Nance*, 825 N.E.2d at 834. In addition, McCrady provides no discussion on this argument in his brief. He cites the rules and makes short statements about both, but he wholly fails to relate them to his affidavits or establish the foundational requirements in order for the rules to apply. Therefore, waiver notwithstanding, his argument fails.

Next we consider whether the trial court properly entered partial summary judgment in favor of McCrady. The Council asserts that there was no violation of the Open Door Law and therefore summary judgment should not have been entered in McCrady's favor. Particularly, the Council alleges that the manner in which McCrady was terminated does not violate the Open Door Law. Further, the Council avers that Council Member Allen's polling of other council members does not violate the Open Door Law.

■ The purpose of the Open Door Law is to ensure that the business of the State of Indiana and its political subdivisions be conducted openly so that the general public may be fully informed. *Gary/Chicago Airport Bd. of Authority v. Maclin*, 772 N.E.2d 463, 468 (Ind.Ct.App. 2002); Ind.Code § 5–14–1.5–1. The provisions of this statute are to be liberally construed in order to give effect to the legislature's intention. *Id.;* Ind.Code § 5–14–1.5–1.

■ Here, the trial court found that McCrady's termination violated the Open Door Law. The designated evidence shows that on August 15, 2000, the Council held a regular meeting, during which there was a discussion of filling the position of Chief of Operations. At that time, McCrady held the position of Chief of Operations. However, McCrady, along with several others, had submitted their resumes in response to an advertisement by the Council for the position of Chief of Operations. Although at the time of the August 15 meeting the Council had interviewed the candidates for the job, including McCrady, it had not yet hired anyone. At the meeting, one of the council members broached the subject of filling the position, and a lengthy, heated discussion ensued. Following the discussion, a vote of the Council was taken on Council Member Allen's motion to appoint Rachel Morgan–Caesar to the position of Chief of Operations. Morgan–Caesar was appointed by a vote of five to three, with

one abstention. In a letter dated August 17, 2000, the President of the Council informed McCrady of his termination from the position of Chief of Operations of the Gary Common Council effective August 18, 2000.

For purposes of the Open Door Law, a final action is "a vote by the governing body on any motion, proposal, resolution, rule, regulation, ordinance, or order." Ind.Code § 5–14–1.5–2(g). A final action must be taken at a meeting open to the public. Ind.Code § 5–14–1.5–6.1(c). In the present case, the action taken by the Council at the August 15 meeting was a final action because it was a vote by the Council on a council member's motion to appoint Morgan–Caesar as Chief of Operations. Further, it was taken at an open meeting. McCrady contends, however, that this vote did not terminate him. He argues that his termination violated the Open Door Law because it was carried out by the August 17 letter and not at the open meeting of August 15. The Council, on the other hand, asserts that McCrady was terminated by the vote at the August 15 meeting and that the subsequent letter simply formalized the termination.

Neither party points to any and we know of no magic words that the Council was required to utter in order to officially terminate McCrady in accordance with the Open Door Law at the open meeting on August 15. It is common sense that hiring person B to fill a position currently held by person A, in effect terminates person A. While a clear statement by the Council that they were terminating McCrady when they voted to appoint Morgan–Caesar to the position of Chief of Operations would have been preferable, a review of the transcript of that meeting plainly indicates that the Council did indeed intend to remove McCrady from his position and was acting to do so. Many of the comments during the Council's discussion were about taking away a person's job, and several of the council members specifically referred to McCrady. For example, one of the council members stated, "I think this thing isn't about that job. I don't think it's about Mr.—well, yeah. It is about Mr. McCrady. You know, but I think this thing is about power. My issue is strictly principle. You know, in fact, I'm not even suggesting that Mr. Antich is the other person that the other five members want to recommend for the job. I don't know that to be a fact because we haven't [sic] that conversation." Appellant's Appendix at 156.

Additionally, another council member asserted, "I asked Councilman Allen to indicate to all of us and the public where this individual is deficient in his job. I mean, if the Councilman can cite instances where this individual is deficient, then I think it would help to clear up all of our thinking. But just to suggest because you can exert power to take someone's job—I think we need to cut the legalese and look at the fact that we're taking somebody's job. And for no other reason than we have five, six, seven votes, or whatever the case might be. I just think there needs to be more of a statement of fact as it relates to taking someone's jobs. It [sic] don't have to necessarily be Robert McCrady. It could be anybody that we could be cavalier enough to just take someone's job just because we have the ability to take their job." Appellant's App. at 145–46. Yet another council member said, "As much as I think—as highly as I think of Mr. McCrady and his integrity, his energy, his dedication to this Council. The only fault he had, he stood up for this Council. And certain people were antagonized by him doing that. So when they had an opportunity, they said well, yeah, let's fire him. He's not acceptable." Appellant's App. at 168. Thus, McCrady was termi-

nated in an open meeting by the final action of the Council's vote on the motion to appoint Morgan–Caesar to the position of Chief of Operations, and no violation of the Open Door Law occurred. Moreover, the letter sent to McCrady by the Council President was a mere formality to inform McCrady of the Council's action at the August 15 meeting with respect to the position of Chief of Operations. The Council President sent letters to all of the other candidates, as well, to inform them of the Council's decision.

■ In addition, the Council contends that summary judgment was not appropriate because there was no violation of the Open Door Law when Council Member Allen polled council members. McCrady, however, asserts that Council Member Allen and several other council members held a secret meeting to discuss the filling of the position of Chief of Operations in violation of the Open Door Law.

The Open Door Law requires that, except for those situations where an executive session is authorized, "all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them." Ind.Code § 5–14–1.5–3. For purposes of the Open Door Law, a meeting is defined as "a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business." Ind. Code § 5–14–1.5–2(c).

In the instant case, there was no meeting that would subject Council Member Allen's discussions with other council members to the Open Door Law. The designated evidence includes Council Member Allen's deposition wherein he testified that he did poll other council members. He stated that he polled five council members that shared his view but that he did this individually. *See* Appellant's App. at 133.

As set out above, in order to have a meeting under the Open Door Law, a majority of the governing body must be present. Such was not the case here. The legislature has specifically defined "meeting" under the Open Door Law as requiring a majority of the governing body; thus, without a majority present, no meeting occurs for purposes of the Open Door Law. *See Dillman v. Trustees of Indiana University*, 848 N.E.2d 348, 350–52 (Ind.Ct. App.2006) (stating that although conduct of trustees in meeting with university president in groups constituting less than a quorum in order to circumvent the Open Door Law was "in direct contravention to the public policy behind the Open Door Law," such conduct is not prohibited and Open Door Law was not violated).

■ Finally, McCrady asserts his entitlement to the attorney fees and expenses awarded to him at the trial level, as well as requesting appellate attorney fees. We review a trial court's award of attorney fees for an abuse of discretion. *Gary/Chicago Airport Bd. of Authority*, 772 N.E.2d at 470. Therefore, we will not reverse the trial court's decision unless the award is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

The Open Door Law provides that with regard to an action filed pursuant to its statutes, a court shall award reasonable attorney's fees, court costs, and other reasonable expenses of litigation to the prevailing party if the plaintiff prevails, or if the defendant prevails and the court finds that the action is frivolous and vexatious. *See* Ind.Code § 5–14–1.5–7(f). Given the result of this appeal and the lack of any allegations of frivolousness or vexatiousness, we reverse the trial court's award of attorney's fees and expenses to McCrady, and we deny his request to assess appellate attorney fees against the Council.

Based upon the foregoing discussion and authorities, we deny McCrady's request to dismiss the Council's appeal, and we conclude that the trial court erred by denying the Council's motions to strike the affidavits of O'Connor and McCrady, as well as McCrady's amended affidavit. In addition, we conclude that the trial court erred by entering summary judgment in favor of McCrady. Finally, we reverse the trial court's award of attorney fees and expenses to McCrady and deny McCrady's request for appellate attorney fees.

Reversed.

MAY, J., and CRONE, J., concur.